UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VINCENT PEPE,

                              Petitioner,
                                                          9:04-CV-0835
v.                                                        (GTS/VEB)

JAMES WALSH, Superintendent,
Sullivan Correctional Facility,

                              Respondent.
_____

APPEARANCES:                                  OF COUNSEL:

PLATZER LUCA & PEARL, LLP                      BARRY FALLICK, ESQ.
    Counsel for Petitioner                     JILLIAN S. HARRINGTON, ESQ.
61 Broadway, Suite 1601
New York, New York 10006

HON. ANDREW M. CUOMO                           JODI A. DANZIG, ESQ.
Attorney General for the State of New York     Assistant Attorney General
    Counsel for Respondent
120 Broadway
New York, New York 10271

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this habeas corpus proceeding filed by Vincent Pepe

("Petitioner") against Sullivan Correctional Facility Superintendent James Walsh

("Respondent"), pursuant to 28 U.S.C. § 2254, is a Report-Recommendation (1) recommending

that (a) Petitioner's application for a write of habeas corpus be denied, and (b) the Court issue a

Certificate of Appealability, and (2) referring the professional conduct of two attorneys for

review by (a) the Chief United States District Judge of the Northern District of New York, and

(b) the Appellate Division, Fourth Department.  (Dkt. No. 102.)  For the reasons stated below,

the portions of the Report-Recommendation that address Petitioner's application for a writ of habeas corpus are accepted and adopted in their entirety, except the portion of the Report-Recommendation recommending that the Court issue a Certificate of Appealability; the portions of the Report-Recommendation referring the professional conduct of two attorneys for review by the Chief Judge and the Appellate Division will be addressed by Chief United States District Judge Gary L. Sharpe separate and apart from this Decision and Order; and Petitioner's application for writ of habeas corpus is denied.

## I.     RELEVANT BACKGROUND

### A.     Factual and Procedural History

Because the parties have submitted memoranda of law throughout the seven-and-a-half-year duration of this case that demonstrate an accurate understanding of the factual and procedural history of this case, the Court will not provide a detailed recitation of that history in this Decision and Order, which is intended primarily for the review of the parties.  Rather, the Court refers the reader to the Report-Recommendation for a detailed description of the factual and procedural history of the case.  (Dkt. No. 102.)

### B.     Summary of Petitioner's Claims

Petitioner asserts the following three grounds for relief.  First, Petitioner claims that he was denied the effective assistance of counsel due to a conflict of interest involving the simultaneous representation of prosecution witnesses by Attorneys Joseph Hobika, Jr. ("Hobika") and George Farber Aney ("Aney").  (*See generally* Dkt. No. 5.)  Second, Petitioner claims that the prosecution violated its *Brady* disclosure obligations by failing to turn over exculpatory and impeachment evidence.  (*Id.*)  Third, Petitioner claims that he was denied the effective assistance of counsel because his trial counsel, Kenneth P. Ray ("Ray"), failed to procure expert forensic testimony.  (*Id.*)

**C.     The Report-Recommendation's Findings**

On November 28, 2011, the Magistrate issued a Report-Recommendation recommending that Petitioner's application be denied.  (Dkt. No. 102.)  Generally, in pertinent part, the Report-Recommendation makes the following seventeen findings in support of its recommendations.  First, because Petitioner's ineffective-assistance-of-counsel claims against Hobika and Aney were adjudicated on the merits, those claims are subject to the deferential standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  (*See generally* Dkt. No. 102.)  Second, consideration of evidence presented to the County Court in support of Petitioner's first[1] motion pursuant to New York Criminal Procedure Law ("CPL") § 440.10 ("440.10 motion") based on a claim of ineffective assistance of counsel against Hobika and Aney is precluded, because the County Court "rested [its] decision upon an adequate and independent state law ground."  (*Id.*)  Third, because a recent U.S. Supreme Court case, *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), limits the Court's review of Petitioner's ineffective-assistance-of-counsel claims against Hobika and Aney to the record presented to the Appellate Division, Fourth Department ("Appellate Division"), the Court is precluded from considering any evidence adduced at the *Sparman* hearing.[2]  (*Id.*)  Fourth, Petitioner failed to rebut, with clear

---

[1]     Petitioner filed two 440.10 motions in state court. The first was filed in October 2000. (Dkt. No. 13, Exh. G [traditionally filed, not electronically filed]; Dkt. No. 123, Attach. 1 at 4-188.)  The second was filed in March 2003.  (Dkt. No. 13, Exh. K [traditionally filed, not electronically filed]; Dkt. No. 123, Attach. 1 at 203-21.)  Because this Decision and Order refers only to Petitioner's 440.10 motion filed in October 2000, it will refer to that motion simply as "440.10 motion."

[2]     Pursuant to *Sparman v. Edwards*, 154 F.3d 51 (2d Cir. 1998), "[A] district court facing the question of constitutional ineffectiveness of counsel should, except in highly unusual circumstances, offer the assertedly ineffective attorney an opportunity to be heard and to present evidence, in the form of live testimony, affidavits, or briefs." *Sparman*, 154 F.3d at 52.  A *Sparman* hearing was conducted in this case from September 15, 2008, through September 18, 2008.  (Text Minute Entry dated Sept. 15, 2008; Dkt. Nos. 66, 68.)

and convincing evidence, the trial court's holding that Petitioner had not established the existence of an attorney-client relationship with either Hobika or Aney during the pre-arrest period.  (*Id.*)  Fifth, because there was no evidence before the Appellate Division to suggest that Hobika simultaneously represented Petitioner and Dominic Crocilla ("Crocilla") and/or Matthew Cuda ("Cuda") during the post-arrest/pre-indictment phase,[3] Petitioner failed to establish ineffective assistance of counsel by Hobika.  (*Id.*)  Sixth, even assuming that evidence was presented to the Appellate Division demonstrating that Aney simultaneously represented Petitioner and Crocilla and/or Cuda during the post-arrest/pre-indictment phase, there was no evidence to support a finding that Petitioner's defense was adversely affected by Aney's simultaneous representation.  (*Id.*)  Seventh, the *Sparman* hearing adduced evidence demonstrated that Hobika and Aney simultaneously represented Petitioner and Crocilla and/or Cuda; and, although that finding can have no bearing on Petitioner's habeas corpus application, the Report-Recommendation referred Hobika and Aney (a) for review by the Chief Judge of the Northern District of New York pursuant to Local Rule 83.4 of the Local Rules of Practice for this Court, and (b) to the Attorney Grievance Committee of the Appellate Division.  (*Id.*)  Eighth, because the County Court deciding Petitioner's ineffective-assistance-of-counsel claim against Ray in Petitioner's 440.10 motion did not decide the claim either upon the merits or upon "an adequate and independent state law ground," consideration of *Sparman* hearing evidence is permitted.  (*Id.*)  Ninth, Ray's affirmation dated September 8, 2008, was untruthful.  (*Id.*)  Tenth, the Assistant Attorney General ("AAG") obtained and sought admission of "fraudulent, false, or perjured testimony" in the form of Hobika and Aney's testimonies, and Ray's affirmation.  (*Id.*)

---

[3]     The Court refers to the time period between March 15, 1994 (the date of Petitioner's arrest), and March 18, 1994 (the date Petitioner was indicted) as "the post-arrest/pre-indictment phase."

Eleventh, under either a *de novo* or AEDPA standard of review, the ineffective-assistance-of-counsel claim against Ray fails.  (*Id.*)  Twelfth, Petitioner's claims against the trial court and District Attorney ("DA") for failing to investigate and/or address potential conflicts of interest are without merit, and, in any event, the claim against the DA is time-barred.  (*Id.*)  Thirteenth, Petitioner's claim that the prosecution failed to turn over any police notes taken during interviews with Petitioner's accomplice, David Benner ("Benner"), is purely speculative.  (*Id.*)  Fourteenth, Petitioner suffered no prejudice when the prosecution failed to provide Petitioner with Benner's polygraph test results because, as a matter of law, Petitioner could not offer them as evidence at trial.  (*Id.*)  Fifteenth, Petitioner's claim that Benner's arrest report was altered is unsupported by the evidence.  (*Id.*)  Sixteenth, the trial court's finding that any non-disclosure of third-party suspects was harmless was not an unreasonable application of existing law, nor was it an unreasonable determination based on the facts in light of the evidence.  (*Id.*)  Seventeenth, Petitioner's ineffective-assistance-of-counsel claim against Ray for failing to investigate forensic irregularities involving Benner's testimony fails, because (a) Petitioner has not offered any authority in support of his position that such failure was unreasonable, (b) Ray effectively cross-examined Benner, and (c) Petitioner has not established a substantial likelihood that the jury would have acquitted him based on a forensic expert's testimony.  (*Id.*)

Based on these findings, the Report-Recommendation recommended the following: (1) Petitioner's application for a writ of habeas corpus should be denied, and (2) the Court should issue a certificate of appealability ("COA") if it denies Petitioner's application for a writ of habeas corpus.  (*See generally* Dkt. No. 102.)  Also based on these findings, the Report-Recommendation referred the professional conduct of Hobika and Aney for review by the Chief Judge of the Northern District of New York and the Appellate Division, Fourth Department.  (*Id.*)

**D.      Petitioner's Objection**

On February 23, 2011, Petitioner filed an Objection to the Report-Recommendation. (Dkt. No. 114.)  Generally, Petitioner's Objection asserts the following eleven arguments.  First, the recent U.S. Supreme Court case, *Pinholster*, does not preclude the Court from considering the evidence adduced at the *Sparman* hearing.  (*See generally* Dkt. No. 114.)  Second, the Appellate Division's decision was not a reasonable application of clearly established federal law, nor was it based on a reasonable determination of the facts.  (*Id.*)  Third, the Court is permitted to consider the evidence submitted to the County Court in support of Petitioner's 440.10 motion as that evidence relates to Petitioner's ineffective-assistance-of-counsel claims against Hobika and Aney.  (*Id.*)  Fourth, the Report-Recommendation erred in finding that the trial court's factual findings during the *Huntley* hearing are entitled to a presumption of correctness.  (*Id.*)  Fifth, the evidence adduced at the *Sparman* hearing established that Hobika and Aney represented Petitioner prior to his arrest.  (*Id.*)  Sixth, whether or not the Court considers the evidence adduced at the *Sparman* hearing, there is sufficient evidence to support a conclusion that Hobika and Aney suffered from actual conflicts of interest during the post-arrest/pre-indictment phase. (*Id.*)  Seventh, Hobika and Aney's actual conflicts of interest adversely affected Petitioner's defense.  (*Id.*)  Eighth, Hobika and Aney's conflicts of interest pervaded and prejudiced Petitioner's state court proceedings.  (*Id.*)  Ninth, Ray's representation of Petitioner amounted to ineffective assistance of counsel, because he failed to (a) call Hobika and Aney as witnesses at the *Huntley* hearing, (b) investigate whether Hobika and Aney suffered from conflicts of interests while they represented Petitioner, and (c) request preclusion of Crocilla and Pugliese's testimonies at trial.  (*Id.*)  Tenth, there is sufficient evidence to support a conclusion that the trial court erred in failing to inform Petitioner of the conflicts of interest.  (*Id.*)  Eleventh,

notwithstanding the fact that the claim is time-barred, the Report-Recommendation erred in concluding that the DA did not have a duty to inform Petitioner of the conflicts of interest.  (*Id.*)

On March 8, 2011, Respondent filed its Response to Petitioner's Objection.  (Dkt. No. 115.)  Respondent argues that, even if Hobika and Aney suffered from a conflict of interest at any time during their alleged representations of Petitioner, Petitioner failed to establish that such conflicts adversely affected the performance of either Hobika or Aney.  (*Id.* at 3.)

### E.    Respondent's Objection

On February 23, 2011, Respondent filed an Objection to the Report-Recommendation. (Dkt. No. 113.)  Generally, Respondent's Objection asserts the following nine arguments.  First, the Report-Recommendation mischaracterized the law on what constitutes an "actual conflict of interest."  (*See generally* Dkt. No. 113.)  Second, because the record before the Court (including the evidence adduced at the *Sparman* hearing) does not demonstrate that Hobika and Aney simultaneously represented Petitioner and Crocilla and/or Cuda, Hobika and Aney could not have testified untruthfully at the *Sparman* hearing, and the AAG could not have knowingly introduced untruthful testimony.  (*Id.*)  Third, the Report-Recommendation mischaracterized the evidence adduced at the *Sparman* hearing as suggesting that Aney encouraged Cuda to convince Petitioner to accept a plea bargain.  (*Id.*)  Fourth, the Report-Recommendation improperly considered a claim that Petitioner did not raise in his application for a writ of habeas corpus. (*Id.*)  Fifth, the record before the Court, including the evidence adduced at the *Sparman* hearing, does not support the Report-Recommendation's finding that Ray's affirmation was demonstrably false, or that the AAG induced Ray to sign the affirmation "under seriously questionable circumstances."  (*Id.*)  Sixth, the Report-Recommendation erred in finding that the County Court did not adjudicate Petitioner's ineffective-assistance-of-counsel claim against Ray in his  440.10

motion on the merits.  (*Id.*)  Seventh, the Court should reject each and every instance in which

the Magistrate overruled an objection by Respondent and sustained an objection by Petitioner in

the *Sparman* hearing.  (*Id.*)  Eighth, the Report-Recommendation erred in recommending that the

Court issue a COA because the Magistrate's interpretation of *Pinholster* is "manifestly correct";

and in any event, even if the Court considered the evidence adduced at the *Sparman* hearing,

Petitioner did not make "a substantial showing of the denial of a constitutional right."  (*Id.*)

Ninth, the Magistrate improperly used the Report-Recommendation to commence attorney

misconduct investigations against Hobika and Aney.  (*Id.*)

Petitioner did not submit a Response to Respondent's Objection.  (*See generally* Docket

Sheet.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review Governing a Report-Recommendation

When a *specific* objection is made to a portion of a magistrate judge's report-

recommendation, the Court subjects that portion of the report-recommendation to a *de novo*

review.  Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).  To be "specific," the objection

must, with particularity, "identify [1] the portions of the proposed findings,  recommendations,

or report to which it has an objection and [2] the basis for the objection."  N.D.N.Y. L.R.

72.1(c).[4]  When performing such a *de novo* review, "[t]he judge may . . . receive further

_____

[4]    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002)
("Although Mario filed objections to the magistrate's report and recommendation, the statement
with respect to his Title VII claim was not specific enough to preserve this claim for review. The
only reference made to the Title VII claim was one sentence on the last page of his objections,
where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set
forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.'
This bare statement, devoid of any reference to specific findings or recommendations to which
he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title
VII claim.").

evidence. . . ." 28 U.S.C. § 636(b)(1).  However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance.[5]

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review.  Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.[6]  Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[7]  Finally, when *no* objection is made to a portion of a report-recommendation, the Court

_____

[5]     *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

[6]     *See also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999).

[7]     *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3).");  *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

subjects that portion of the report-recommendation to only a *clear error* review.  Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition.  When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Id*.[8]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

## III.   ANALYSIS

### A.   The Report-Recommendation's Findings Regarding Potential Attorney Misconduct

As noted above in Part I.C. of this Decision and Order, the Report-Recommendation includes findings that relate to potential attorney misconduct by Hobika and Aney during the early stages of the state court proceedings against Petitioner, and by the AAG during the *Sparman* hearing.  (Dkt. No. 102 at 42-47, 54-55, 64.)  Specifically, the Magistrate's seventh and tenth findings, as described above in Part I.C. of this Decision and Order, address these issues. (*Id*.)  Additionally, Respondent's second, third, fifth, and ninth arguments contained in its Objection, as described above in Part I.E. of this Decision and Order, object to these findings. (Dkt. No. 113 at 13-42, 43-45, 46-62.)

The Court will not address the Report-Recommendation's findings regarding potential attorney misconduct, as well as Respondent's objections to those findings, in this Decision and Order.  This is because, after careful consideration, the Court finds that the outcome of

---

[8]     *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

Petitioner's application for a writ of habeas corpus is not contingent, in any way, on whether it adopts the Report-Recommendation's findings as they relate to these issues. Instead, as noted earlier, these issues have been submitted to Chief Judge Sharpe for his review, determination, and decision.

### B.     Petitioner's Objections

In accordance with Local Rule 72.1(c) of the Local Rules of Practice for this Court, the Court finds that all of Petitioner's objections are specific in nature because Petitioner identified the portions of the Report-Recommendation to which he objects with particularity, and Petitioner cited legal authority in an effort to support the objections. (*See generally* Dkt. No. 114.) As a result, the Court subjects those portions of the Report-Recommendation to which Petitioner objects to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).

After careful consideration of the parties' submissions and the Report-Recommendation, the Court rejects all of Petitioner's arguments in his Objection. Specifically, the Court finds Petitioner's arguments to be unpersuasive and/or reinventions of Petitioner's previous arguments contained in Petitioner's *Sparman* hearing summation (Dkt. No. 81), which the Magistrate had the opportunity to consider before issuing the Report-Recommendation. Moreover, the Court finds the Report-Recommendation's findings to which Petitioner objects are well-reasoned and supported by the relevant facts and law.

The Court would add only two points. First, the Court respectfully disagrees with the Report-Recommendation's finding that the *Sparman* hearing evidence adequately demonstrates that Hobika and Aney simultaneously represented Petitioner and Crocilla and/or Cuda during the post-arrest/pre-indictment phase, and that such simultaneous representation gave rise to an actual conflict of interest. (Dkt. No. 102 at 32-35.) The Second Circuit has determined that an "actual"

conflict of interest (as opposed to a "per se" or "potential" conflict of interest) arises "when the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Armienti v. U.S.*, 234 F.3d 820, 823 (2d Cir. 2000); *see also U.S. v. Fulton*, 5 F.3d 605, 609 (2d Cir. 1993) ("In the multiple representation context, an attorney has an actual, as opposed to a potential, conflict of interest when 'during the course of the representation, the defendants' interests . . . diverge with respect to a material factual or legal issue or to a course of action.'") (quoting *Cuyler v. Sullivan*, 446 U.S. at 356 n.3 [1980]).[9] Once an actual conflict of interest has been established, the petitioner is then required to demonstrate his defense was adversely affected by the conflict of interest. *Strouse v. Leonardo*, 928 F.2d 548, 555 (2d Cir. 1991) ("If the court finds that [the petitioner's] representation was infected by an actual conflict of interest, it should then determine whether this conflict 'adversely affected' his performance.") If the petitioner is able to demonstrate this, he is exempt from proving the "prejudice" prong of the *Strickland* test.[10] *U.S. v. White*, 174 F.3d 290, 295 (2d Cir. 1999) (holding that, where a

---

[9]       The Court respectfully rejects the Report-Recommendation's legal conclusion that "[t]he concurrent representation of multiple defendants is an 'actual conflict of interest' sufficient to invoke the presumption of prejudice under applicable Supreme Court precedent." (Dkt. No. 102 at 35 [citing *Mickens v. Taylor*, 535 U.S. 162, 175 (2002)].) *See Beets v. Scott*, 65 F.3d 1258, 1268 (5th Cir. 1995) ("[N]ot every potential conflict, even in multiple representation cases, is an 'actual one for Sixth Amendment purposes."); *Gov't of Virgin Islands v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984) ("It is now well-established that multiple representation . . . does not constitute a constitutional violation.  The conflict must be 'actual.'").  The Second Circuit has reiterated its legal standard for finding an "actual" conflict of interest, and although simultaneous representation of codefendants *may* give rise to an actual conflict of interest, a petitioner is required to show that the simultaneous representation resulted in a divergence of his and the attorney's interests "with respect to a material factual or legal issue or to a course of action." *Armienti*, 234 F.3d at 823; *see also U.S. v. Moore*, 220 F.3d 65, 69 (2d Cir. 2000);  *U.S. v. Levy*, 25 F.3d 146, 155 (2d Cir. 1994); *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993).

[10]      The Court adopts the Report-Recommendation's recitation of the legal standard for an ineffective-assistance-of-counsel claim announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  (Dkt. No. 102 at 26.)

petitioner's ineffective assistance of counsel claim is based on alleged conflict of interest, the

petitioner "is entitled to a presumption of prejudice if he can demonstrate that his attorney

labored under an actual conflict of interest and that the actual conflict of interest adversely

affected his lawyer's performance").

Here, with regard to Aney, the Court is unable to find that the *Sparman* hearing evidence

demonstrates that Aney simultaneously represented Petitioner and Crocilla and/or Cuda during

the post-arrest/pre-indictment phase.  (Dkt. No. 102 at 35 n.16.)  Rather, the Court finds that the

*Sparman* hearing evidence does not demonstrate that Aney's and Petitioner's "interests

diverge[d] with respect to a material factual or legal issue or to a course of action" (*Armienti*,

234 F.3d at 823) because there is insufficient evidence to conclusively establish when Aney's

representation of Petitioner terminated.   Although it is clear that Aney made an appearance at

Petitioner's arraignment on March 16, 1994, the *Sparman* hearing testimony is inconclusive (and

therefore unconvincing) as to whether Aney's representation terminated (1) immediately after

the appearance,[11] (2) after the meeting on the same day with Petitioner's family,[12] (3) the night of

---

[11]     (Dkt. No. 70 at 215, 217 [Aney testifying that, on the day after he appeared for
Petitioner at arraignment, he did not represent Petitioner, and that he "told [the ADA] that [he]
was not involved in the case, [he] did not represent [Petitioner] and [he] never did"]; Dkt. No. 70
at 234 [Aney testifying that his "involvement in this case was a matter of hours"]; Dkt. No. 70 at
250 [Aney testifying that, on March 16, 1994, he told Petitioner that he "was just appearing on a
very limited basis that morning and that [he] had told Mr. Crocilla to contact Ken Ray"]; Dkt.
No. 70 at 150-53 [Judge Dwyer testifying that he recalls learning that Ray would represent
Petitioner on March 17, 1994]; *but see* Dkt. No. 70 at 222 [Aney testifying that, on the evening
of Petitioner's arraignment, he visited Petitioner in jail with one of his employees, and that Aney
would not permit the employee to visit with Petitioner because he was not an attorney "and [the
meeting] might be privileged"]; Dkt. No. 72 at 39 [Petitioner testifying that after the March 16,
1994, appearance by Aney, Petitioner believed Aney was his lawyer].)

[12]     (Dkt. No. 70 at 218-19 [Aney testifying that, in the afternoon of Petitioner's
arraignment on March 16, 1994, he met with Petitioner's family in which he told Petitioner's
family that he would not represent Petitioner]; Dkt. No. 70 at 236 [Aney testifying that he recalls
telling Petitioner or his family, "the very first time he met with [them on March 16, 1994]," that

March 16, 1994, when Aney visited Petitioner in jail,[13] (4) on March 18, 1994, when Petitioner

and Ray executed a retainer agreement,[14] or (5) on March 22, 1994, when Ray made his first

appearance on behalf of Petitioner.[15]  In addition, it is clear that Aney acted as Crocilla's attorney

on March 17, 1994, when Crocilla testified before the Grand Jury for three reasons: (1) Aney

testified he met Crocilla at the DA's office on the morning of the Grand Jury proceedings at

Crocilla's request (Dkt. No. 70 at 211); (2) Aney testified that he explained the Grand Jury

procedure to Crocilla (Dkt. No. 70 at 211); and (3) Judge Dwyer testified that he declined, upon

Aney's request, to discuss with Crocilla the substance of Crocilla's pending Grand Jury

testimony before Crocilla testified (Dkt. No. 70 at 147-48).  *See In re Bonnano*, 344 F.2d 830,

833 (2d Cir. 1965) ("We recognize that an attorney-client relationship arises when legal advice

of any kind is sought from a professional legal adviser in his capacity as such.").  However, it is

---

they should retain Ray]; Dkt. No. 70 at 252 [Aney testifying that the meeting with Petitioner's family on March 16, 1994, lasted no more than 15 minutes, and that he never had a retainer agreement with Petitioner]; Dkt. No. 1, Attach. 3 at 6-7 [Sylvia Pepe's affidavit confirming that she, and others, met with Aney on the afternoon of March 16, 1994, and that she was skeptical about hiring Aney]; Dkt. No. 71 at 11 [Sylvia Pepe testifying that, after the March 16, 1994, meeting with Aney, she and her family "decided to get our own attorney"].)

[13]     (Dkt. No. 70 at 223 [Aney testifying that he visited Petitioner at the jail on the night of March 16, 1994, out of courtesy to the Pepe family and because Crocilla, a friend of Aney's, asked him to]; Dkt. No. 70 at 254 [Aney testifying that he explained to Crocilla on the night that he visited Petitioner at the jail that he "simply would not be – get involved with the case on any kind of basis"]; Dkt. No. 70 at 255 [Aney testfying that he told Petitioner, on the night that he visited Petitioner at the jail, that he "would not serve as defense counsel for him in this matter"]; *but see* Dkt. No. 72 at 42 [Petitioner testifying that he and Aney discussed several details of the case the night Aney visited Petitioner at the jail]; Dkt. No. 72 at 52 [Petitioner testifying that, at the jail the evening Aney visited, Aney did not indicate to Petitioner that he would not represent him].)

[14]     (Dkt. No. 70 at 67-68 [Wason testifying that the retainer agreement between Petitioner and Ray was executed on March 18, 1994].)

[15]     In its Opinion, the Appellate Division assumed, for the sake of argument, that Aney's representation of Petitioner terminated on this date.  (Dkt. No. 13, Exh. D at 2 [traditionally filed, not electronically filed]; Dkt. No. 123 at 221-23.)  The Report-Recommendation assumed the same. (Dkt. No. 102 at 34.)

not clear when Aney's representation of Crocilla began, or whether his representation of

Petitioner overlapped with his representation of Crocilla.  Without knowing when Aney's

representation of Petitioner ended and when Aney's representation of Crocilla began, the Court

can only speculate as to whether Aney actually engaged in simultaneous representation.  Because

the Court cannot determine whether Aney actually engaged in simultaneous representation of

Petitioner and Crocilla[16] during the post-arrest/pre-indictment phase, the Court cannot conclude

that Aney operated under an actual conflict of interest.

Moreover, even if the Court were to find (or assume for the sake of argument, as the

Appellate Division did) that Aney engaged in simultaneous representation of Petitioner and

Crocilla, the Court finds that the *Sparman* hearing testimony did not demonstrate that Petitioner

and Aney's "interests diverge[d] as to a material factual or legal issue or to a course of action."

*Armienti*, 234 F.3d at 823.  More specifically, the *Sparman* hearing evidence is unclear (and

therefore unconvincing) as to whether (and if so, when), (1) Petitioner divulged information to

Aney regarding Pugliese,[17] (2) Aney prohibited Petitioner from testifying before the Grand

Jury,[18] and (3) Petitioner and Aney discussed a pre-indictment plea offer.[19]  For all of these

---

[16]     The Court finds that Aney did not represent Cuda at any time during the post-arrest/pre-indictment phase based on Aney's testimony that he cannot recall Cuda even being present at the District Attorney's office on the day of the Grand Jury proceedings.  (Dkt. No. 70 at 214.)

[17]     (*Compare* Dkt. No. 70 at 228, 240-46 [Aney testifying that he does not recall discussing anything about Pugliese with Petitioner] *with* Dkt. No. 72 at 48-49, 62-63 [Petitioner testifying that, when Aney visited him in the jail the evening of March 16, 1994, Petitioner told Aney that he was worried about Pugliese's knowledge regarding Petitioner's involvement in the murders].)

[18]     (*Compare* Dkt. No. 70 at 225, 226 [Aney testifying that, although he could not clearly recall the conversation, to the extent he and Petitioner talked about Petitioner testifying at Grand Jury during Aney's evening visit to the jail on March 16, 1994, Aney did not recommend Petitioner testify based on the little information Aney had at the time] *with* Dkt. No. 72 at 50 [Petitioner testifying that he asked Aney during Aney's visit to the jail on March 16, 1994, whether he should attend Grand Jury]; *but see* Dkt. No. 1, Attach. 3 at 3 [Petitioner's affidavit in

reasons, the Court finds that the *Sparman* hearing evidence does not demonstrate that Aney operated under an actual conflict of interest giving rise to a meritorious ineffective-assistance-of-counsel claim.

With regard to Hobika, the Court respectfully disagrees with the Report-Recommendation's finding that the *Sparman* hearing evidence demonstrates that Hobika simultaneously represented Petitioner and Crocilla and/or Cuda during the post-arrest/pre-indictment phase.  (Dkt. No. 102 at 33 n.13.)  The Report-Recommendation specifically found that, at the *Sparman* hearing, (1) "Cuda testified credibly that Hobika attended the grand jury proceedings as [Cuda's] attorney," and (2) to explain why he accompanied Cuda, "Hobika offered the preposterous claim that he accompanied Cuda . . . as a 'learning experience' and for 'moral support,' but not as his lawyer."  (*Id.*)

As for the first finding, after carefully reviewing the *Sparman* hearing record, the Court finds that Cuda inconsistently testified about who represented him (if anyone at all) at the Grand Jury proceedings.  (*Compare* Dkt. No. 71 at 100 ["I think Joseph Hobika represented me in the grand jury proceedings."] and Dkt. No. 71 at 105 ["George Aney represented Dominick [Crocilla], Joseph Hobika represented myself."] *with* Dkt. No. 71 at 122 ["Never, [Hobika] was never my lawyer once, George Aney was my attorney then for many years."].)[20]  Because of

_____

support of his 440.10 motion indicating that Aney disregarded Petitioner's "strong assertion" to testify at Grand Jury].)

[19]    (*Compare* Dkt. No. 70 at 210, 227, 228, 251 [Aney testifying that he never discussed the possibility of a pre-indictment plea offer with Petitioner] and Dkt. No. 70 at 150, 185 [Judge Dwyer testifying that he did not discuss a pre-indictment plea offer with Aney] *with* Dkt. No. 72 at 43-44, 48, 50 [Petitioner testifying that Aney indicated that he would secure Petitioner a plea offer].)

[20]    Moreover, although it was struck from the record (presumably as non-responsive), the Court cannot help but notice that Cuda also clearly testified that "Mr. Hobika was not [his] attorney, George Aney was [his] attorney."  (Dkt. No. 71 at 121.)

these inconsistencies, the Court cannot conclude that Cuda testified that Hobika represented him at the Grand Jury proceeding with any credibility.

As for the second holding, the Court finds that Hobika did not admit "that he accompanied Cuda to the grand jury." (Dkt. No. 102 at 33.) Instead, to be precise, Hobika testified as follows:

> Q    Did you go with [Cuda] the day that he testified in the grand jury?
> A    I was present there, I was asked to go by Dominick Crocilla for basically moral support. I knew his family, his brother, his dad, I think he passed away at that time, and I went there basically to get to see what happened on the inside. I had never seen anything like that before or participated in anything like that, so I kind of took it as a learning experience and that's what I was doing there.
> Q    So you were there on behalf of Dominick Crocilla, not Matthew –
> A    I was not there in any – as a lawyer I guess is the way you would put it. I was there watching something and basically learning, or trying to learn, I should say.

(Dkt. No. 70 at 111-12.) In the Court's view, this testimony demonstrates Hobika's attempt to (1) resist any conclusion that he "accompanied" or "went with" anyone to the Grand Jury proceedings, and (2) insist that his presence was unrelated to legal representation. Based on this testimony, the Court cannot conclude Hobika "accompanied Cuda to the grand jury." (Dkt. No. 102 at 33.)

For all of these reasons, the Court respectfully disagrees with the Report-Recommendation's findings that, if the Court was permitted to consider the *Sparman* hearing evidence, the evidence would mandate a finding that Hobika and Aney (1) simultaneously represented Petitioner and Crocilla and/or Cuda, and (2) operated under an actual conflict of interest.

The Court hastens to add, however, that it agrees with the Report-Recommendation's ultimate holding that, notwithstanding the *Sparman* hearing evidence, the evidence presented

during the state court proceedings does not support a finding that Hobika and Aney

simultaneously represented Petitioner and Crocilla and/or Cuda during the post-arrest/pre-

indictment phase, for the reasons stated in the Report-Recommendation.  (Dkt. No. 102 at 32,

35-36.)

Second, the Court finds the Report-Recommendation's finding regarding the outcome of

the *Huntley* hearing in state court to be superfluous for the following two reasons.  (Dkt. No. 102

at 28 n.10.)  First, the Magistrate Judge's findings and comments on this subject are immaterial

given that he is not, in fact, permitted to review the state-court *Huntley* hearing proceeding under

a de novo standard of review.  Second, and more importantly, the Court respectfully disagrees

with the notion that Hobika's and Aney's credibility at a federal court hearing could change the

outcome of the admissibility of Petitioner's statements to law enforcement at a hearing in 1995

(thirteen years before the federal court hearing).

## B.      Respondent's Objections

 In accordance with Local Rule 72.1(c) of the Local Rules of Practice for this Court, the

Court finds that all of Respondent's objections are specific in nature because Respondent

identified the portions of the Report-Recommendation to which he objects with particularity, and

Respondent cited legal authority in an effort to support the objections.  (*See generally* Dkt. No.

113.)  As a result, the Court subjects those portions of the Report-Recommendation to which

Respondent objects to a *de novo* review.  Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C).

After careful consideration of the parties' submissions and the Report-Recommendation,

the Court rejects the first, fourth, and sixth arguments asserted by Respondent, as described

above in Part I.E. of this Decision and Order.  Specifically, the Court finds these arguments to be

unpersuasive and/or reinventions of Respondent's previous arguments contained in

Respondents's *Sparman* hearing summation (Dkt. No. 98), which the Magistrate had the opportunity to consider before issuing the Report-Recommendation.  Moreover, the Report-Recommendation's findings, as they relate to Respondent's first, fourth, and sixth arguments, are well-reasoned and supported by the relevant law.

The Court would add only three points.  First, as to Respondent's sixth argument (i.e., that the Report-Recommendation erred in finding that the County Court did not adjudicate Petitioner's ineffective assistance of counsel claim against Ray in his  440.10 motion on the merits), the Court finds this argument meritless.  (Dkt. No. 113 at 63-66.)

In support of its argument, Respondent asks the Court to find that, when the County Court determined that Petitioner's ineffective-assistance-of-counsel claims against Hobika and Aney had already been decided by the Appellate Division on the merits, the County Court deduced (or, "necessarily" found) that Petitioner's ineffective-assistance-of-counsel claim against Ray also failed on the merits.  (Dkt. No. 113 at 65.)  Therefore, Respondent argues that the Court is required to review the claim under the AEDPA standard of review rather than *de novo*.  (*Id.*)  A careful review of the County Court's Decision and Order, however, does not support such a conclusion.

Without specifying the particular ineffective-assistance-of-counsel claims to which it referred,[21] the County Court concluded that "[t]he issue of conflicting representation was raised by appellate counsel before the Appellate Division.  The Appellate Division reviewed that argument, and specifically denied the same."  (Dkt. No. 13, Exh. H at 3 [traditionally filed, not filed electronically] [citations omitted]; Dkt. No. 123, Attach. 1 at 189-94.)  In rejecting the

---

[21]        In his 440.10 motion, Petitioner asserted three ineffective-assistance-of-counsel claims: one against each Hobika and Aney based on conflict of interest; and one against Ray for failure to investigate, discover and present exculpatory forensic evidence.  (Dkt. No. 13, Exh. G [traditionally filed, not electronically filed]; Dkt. No. 123, Attach. 1 at 4-188.)

unspecified ineffective-assistance-of-counsel claim, the County Court held that "[t]he issue was raised on direct appeal, and denied.  This Court will not review [the] same, nor does this Court have the authority to so."  (*Id.*)

According to the Report-Recommendation, this holding by the County Court applied only to the ineffective-assistance-of-counsel claims against Hobika and Aney because those are the claims that were raised on appeal to the Appellate Division.  (Dkt. No. 102 at 4-50.)  The Court agrees with this reasoning because, in the County Court's Decision and Order, it stated that it reviewed the letter that Petitioner issued in support of his request for leave to appeal to the New York State Court of Appeals ("Court of Appeals") that included "the exact issues of alleged *simultaneous representation* as raised . . . in the present motion were highlighted."  (Dkt. No. 13, Exh. H [traditionally filed, not filed electronically]; Dkt. No. 123, Attach. 1 at 189-94 [emphasis added].)  Because the only ineffective-assistance-of-counsel claims based on "simultaneous representation" that have ever been raised in this case are against Hobika and Aney, it follows that the County Court's holding on this point applied only to Petitioner's ineffective-assistance-of-counsel claims against Hobika and Aney.  In addition, a review of Petitioner's letter in support of his request for leave to appeal to the Court of Appeals supports this finding, because Petitioner's letter addresses ineffective-assistance-of-counsel claims only against Hobika and Aney.  (Dkt. No. 13, Exh. E at 2-3 [traditionally filed, not electronically filed]; Dkt. No. 123 at 224-50.)

For all of these reasons, the Court rejects Respondent's sixth argument that the Report-Recommendation erred in finding that the County Court did not address Petitioner's ineffective-assistance-of-counsel claim against Ray on the merits.[22]

---

[22]     Moreover, any error in this regard was harmless because the Report-Recommendation reviewed Petitioner's ineffective-assistance-of-counsel claims against Ray

Second, as to Respondent's seventh argument (i.e., regarding the Magistrate's evidentiary rulings at the *Sparman* hearing), the Court finds this argument moot because, as discussed more completely in the Report-Recommendation, the Supreme Court's decision in *Pinholster* precludes the Court from considering any evidence adduced at the *Sparman* hearing.  (*See generally* Dkt. No. 102 at 15-23.)

Third, as to Respondent's ninth argument (i.e., relating to the Report-Recommendation's recommendation that it should issue a COA if the Court denies Petitioner's application for a writ of habeas corpus), the Court agrees with Respondent.  Pursuant to 28 U.S.C. § 2253(c), a district court may issue a COA if a petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c); *see also Blackman v. Ercole*, 661 F.3d 161, 163 (2d Cir. 2011) ("The federal habeas appeals statute, as amended by the [AEDPA], provides that a district court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right.") (internal quotation marks, brackets and ellipse omitted).

To satisfy this showing where the district court rejected a petitioner's application for a writ of habeas corpus on the merits, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

---

under both the AEDPA standard of review and a *de novo* standard of review.  (Dkt. No. 102 at 50 ["However, out of an abundance of caution, this Court will review the claim under both the deferential AEDPA standard and *de novo*."].)

Here, the Court declines to issue a COA because it does not believe that reasonable jurists would find the Court's assessment of Petitioner's claims "debatable or wrong." *McDaniel*, 529 U.S. at 484.  Specifically, even if the Court were to accept as true Petitioner's allegations that Hobika and Aney operated under an actual conflict of interest by simultaneously representing Petitioner and Crocrilla and/or Cuda during any time prior to, or after, Petitioner's arrest, the evidence contained in the state-court record is insufficient to suggest that Hobika and/or Aney's representation of Petitioner was adversely affected by the conflict of interest.  In coming to this conclusion, the Court has reviewed the following state-court records: (1) Petitioner's brief on appeal to the Appellate Division following his conviction (Dkt. No. 13, Exh. A [filed traditionally, not filed electronically]; Dkt. No. 123 at 5-123); (2) the Appellate Division's Opinion dismissing Petitioner's appeal (Dkt. No. 13, Exh. D [filed traditionally, not filed electronically]; Dkt. No. 123 at 221-23); (3) Petitioner's request for leave to appeal the Appellate Division's dismissal of his appeal to the Court of Appeals (Dkt. No. 13, Exh. E [filed traditionally, not filed electronically];  Dkt. No. 123 at 224-50); (4) Petitioner's 440.10 motion, including the memorandum of law in support and the accompanying supporting exhibits (Dkt. No. 13, Exh. G [filed traditionally, not filed electronically]; Dkt. No. 123, Attach. 1 at 4-188); (5) the Oneida County Court's Decision and Order denying Petitioner's 440.10 motion dated November 26, 2001 (Dkt. No. 13, Exh. H [filed traditionally, not filed electronically]; Dkt. No. 123, Attach. 1 at 189-94); (6) Petitioner's request for leave to appeal the Oneida County Court's Decision and Order denying his 440.10 motion (Dkt. No. 13, Exh. I [filed traditionally, not filed electronically]; Dkt. No. 123, Attach. 1 at 195-200); (7) the Appellate Division's denial of Petitioner's leave to appeal the Oneida County Court's Decision and Order denying his 440.10 motion (Dkt. No. 13, Exh. J [filed traditionally, not filed electronically]; Dkt. No. 123, Attach. 1

at 201-02); (8) Crocilla's Grand Jury testimony (Dkt. No. 117 at 2-57); (9) Cuda's Grand Jury

testimony (Dkt. No. 117 at 58-92); (10) Crocilla's trial testimony (Dkt. No. 121 at 67-111); (11)

Pugliese's trial testimony (Dkt. No. 121, Attach. 2 at 131-71); (12) the transcripts of the Utica

City Court proceedings on March 15 & 16, 1994 (Dkt. No. 118 at 1-23); (13) the transcript of the

Oneida County Court proceedings on March 22, 1994 (*Id.* at 24-30); (14) Petitioner's affidavit

submitted in support of his motion to suppress his statements made to Utica Police Department

dated August 17, 1994 (Dkt. No. 122 at 85-87); (15) Petitioner's trial testimony (Dkt. No. 121,

Attach. 1 at 41-200; Dkt. No. 121, Attach. 2 at 1-109); (16) the *Huntley* hearing transcript (Dkt.

No. 118 at 93-200; Dkt. No. 118, Attach. 1 at 1-200; Dkt. No. 118, Attach. 2 at 1-334); (17) the

*Huntley* hearing exhibits (Dkt. No. 122 at 131-42 and Dkt. No. 117, Attach. 6); and (18) the trial

court's *Huntley* hearing Decision (Dkt. No. 122 at 176-94).

After carefully reviewing the matter, the Court finds that none of the above-referenced

state-court records contain evidence demonstrating that Hobika's and Aney's alleged conflicts

adversely affected Petitioner's decision not to testify before the Grand Jury such that reasonable

jurists would disagree.[23]  Additionally, none of those records contain evidence demonstrating

that Hobika's and Aney's alleged conflicts of interest adversely affected whether Petitioner

would have been offered, would have considered, or would have accepted a pre-indictment plea

offer from the prosecution such that reasonable jurists would disagree.[24]  Finally, none of those

_____

[23]     The Court notes that, even if it were permitted to consider the *Sparman* hearing
evidence, it would come to the same conclusion, because there is no evidence suggesting that
Aney advised Petitioner not to testify *because of* his conflict of interest.  Indeed, because it is
unclear  when Aney's representation of Crocilla commenced and  when Aney learned of
Crocilla's subpoena, it is unclear when Aney's conflict of interest actually materialized, if it did
at all.

[24]     Similarly, the Court notes that, even if it were permitted to consider the *Sparman*
hearing evidence, it would come to the same conclusion, because Judge Dwyer testified at the

records contain evidence demonstrating that Hobika's and Aney's alleged conflicts of interest adversely affected petitioner's defense as it relates to either Pugliese's decision to testify at trial or the content of Pugliese's testimony at trial such that reasonable jurists would disagree.[25]

Finally, the Court declines to issue a COA because it does not believe that "the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. The Court finds the Report-Recommendation's interpretation of *Pinholster*[26] is adequately supported by *Pinholster*'s language, as well as the case law that has developed since *Pinholster* was issued in April 2011.[27] For all of these reasons, the Court declines to issue a COA.

---

hearing that he did not consider a pre-indictment plea offer with Petitioner. Without the existence of a prosecutor willing to consider a pre-indictment plea offer, even Aney's best efforts to secure a deal for Petitioner would have failed.

[25]    Similarly, the Court notes that, even if it were permitted to consider the *Sparman* hearing evidence, it would come to the same conclusion, because Pugliese's account of how he came to testify as a rebuttal witness remained consistent at the time of trial and during the *Sparman* hearing. Specifically, Pugliese testified at trial and the *Sparman* hearing that he initiated contact with Aney about the possibility of possessing helpful information for the prosecution, rather than Aney seeking out Pugliese for his testimony.

[26]    The Report-Recommendation made two findings with regard to *Pinholster*. First, the Report-Recommendation concluded that *Pinholster* "explicitly forecloses" consideration of evidence not presented to the state courts by federal courts, and therefore "expressly limits [a federal court's] review to 'the record that was before the state court that adjudicated the claim on the merits.'" (Dkt. No. 102 at 17-18 [citing *Pinholster*, 131 S. Ct. at 1398].)  Second, the Report-Recommendation concluded that *Pinholster* effectively abrogates *Sparman*'s mandate that federal district courts hold evidentiary hearings when "facing the question of constitutional ineffectiveness of counsel." (Dkt. No. 102 at 18 [citing *Sparman*, 154 F.3d at 52].)

[27]    *See Clark v. Thaler*, 673 F.3d 410, 417 (5th Cir. 2012) ("In light of the teachings in *Pinholster*, we . . . consider only the record that was before the state habeas court. To prevail on his ineffective assistance claim, then, [the petitioner] 'must overcome the limitation of § 2254[d][1] on the record that was before the state court.'"); *Brown v. Wenerowicz*, 633 F.3d 619, 628 (3d Cir. 2011) ("As a threshold matter, the Commonwealth claims that the District Court should not have granted [the petitioner] an evidentiary hearing. We agree based on [*Pinholster*], which the Supreme Court decided after the District Court ruled in this case."); *Gonzalez v. Wong*, 667 F.3d 965, 972 (9th Cir. 2011) ("Under *Pinholster*, we may not consider those later-discovered materials in reviewing [the petitioner's] federal habeas claim."); *Ridgeway v. Zon*,

**ACCORDINGLY**, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 102) is **ACCEPTED** and

**ADOPTED** in its entirety, except for the portion recommending that the Court issue a

Certificate of Appealability; and it is further

**ORDERED** that Petitioner's application for a writ of habeas corpus (Dkt. No. 1) is

**DENIED**.

The Clerk of the Court is directed to enter judgment in favor of Respondent and close this

action.

Dated:  May 24, 2012
        Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

424 F. App'x 58, 60 (2d Cir. 2011) (refusing, in light of *Pinholster*, to remand the case to the district court "to give [the petitioner's] counsel an opportunity to explain behavior" that may have given rise to an ineffective-assistance-of-counsel claim); *Jackson v. Kelly*, 650 F.3d 477, 485 (4th Cir. 2011) ("In light of [*Pinholster*'s] admonition that our review is limited 'to the record that was before the state court that adjudicated the claim on the merits,' we avoid discussion of the evidence taken in the federal evidentiary hearing." [internal citation omitted]); *Atkins v. Clarke*, 642 F.3d 47, 49 (1st Cir. 2011) (dismissing a petitioner's appeal from the district court's denial of his motion for an evidentiary hearing in support of his application for a writ of habeas corpus based on *Pinholster*'s holding that a petition for a writ of habeas corpus "is limited to the record that was before the state court that adjudicated the claim on the merits") [citing *Pinholster*, 131 S. Ct. at 1398].)